UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| TANYA R. BELCHER, ) | CASE NO. 3:16CV2006 |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | GEORGE J. LIMBERT |
| NANCY A. BERRYHILL[1], ) | |
| ACTING COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| Defendant. ) | |

Plaintiff Tanya R. Belcher ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on November 14, 2016, Plaintiff asserts that the administrative law judge ("ALJ") issued a decision that was not based on substantial evidence and erred as a matter of law when evaluating the medical opinions of record. ECF Dkt. #10. Defendant filed a response brief on January 27, 2017. ECF Dkt. #16. Plaintiff did not file a reply brief.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed her applications for DIB and SSI in August 2012, alleging disability beginning on September 30, 2011. ECF Dkt. #9 ("Tr.") at 397-404.[2] These applications were denied initially and upon reconsideration. *Id.* at 290-301. Following the

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

denial, Plaintiff requested a hearing before an ALJ, which was held on June 17, 2014. *Id.* at 150. A supplementary hearing was held on February 25, 2015. *Id.* at 124. On March 24, 2015, the ALJ denied Plaintiff's applications for DIB and SSI. *Id.* at 100. Subsequently, the Appeals Council denied Plaintiff's request for review. *Id.* at 1.

On August 11, 2016, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on November 14, 2016. ECF Dkt. #10. Defendant filed a response brief on January 27, 2017. ECF Dkt. #16. Plaintiff did not file a reply brief.

## II.     **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

In the decision issued on March 24, 2015, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2015. Tr. at 105. The ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 30, 2011, the alleged onset date. *Id.* Continuing, the ALJ stated that Plaintiff had the following severe impairments: dermatitis; osteoarthritis; borderline intellectual functioning; depression; anxiety; and post-traumatic stress disorder. *Id.* at 106. The ALJ then found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

After consideration of the record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to: lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday, with normal breaks; and occasionally climb ladders, ropes, or scaffolds, but that she must avoid all exposure to fumes, odors, dusts, gases, poor ventilation, and extreme heat. Tr. at 109. The ALJ also found that Plaintiff: would need instruction by demonstration; could perform simple, routine, and repetitive tasks with no strict production requirement in a relatively stable work environment with static work processes and procedures; was unable to meet high-paced production demands or perform complex and detailed tasks; could have occasional close, interpersonal interactions with coworkers and occasional interaction with the public; and must avoid prolonged exposure to extreme temperatures and weather. *Id.*

Continuing, the ALJ determined that Plaintiff had no past relevant work, was a younger individual on the alleged disability onset date, had at least a high school education and was able to communicate in English, and that the transferability of job skills was not an issue because Plaintiff did not have past relevant work. Tr. at 115. Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* In conclusion, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 30, 2011, through the date of the decision. *Id.* at 116.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**IV.    STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra* (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)) (internal citations omitted).

**V.    ANALYSIS**

  **A.    General Arguments**

Plaintiff begins the argument portion of her brief with a section titled "Overview." ECF Dkt. #10 at 11. In this section, Plaintiff makes a number of brief arguments. *Id.* at 11-14. First, Plaintiff asserts that the ALJ found that there were jobs that existed in significant numbers to allow Plaintiff to maintain substantial gainful activity, but that Plaintiff lived in a largely rural

-4-

area of Ohio with no transportation to other areas for employment. *Id.* Defendant correctly states that the appropriate standard is whether jobs that Plaintiff could perform existed in the national economy, rather than near Plaintiff's place of residence. ECF Dkt. #16 at 14-15 (citing 42 U.S.C. § 423(d)(2)(A); *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999)). Accordingly, Plaintiff's argument regarding the number of local jobs available to her is without merit.

Next, Plaintiff claims that treating physician, Craig Thompson, M.D., did not have access to all of the medical records in this case.[3] ECF Dkt. #10 at 11. Plaintiff states that the ALJ "overruled" the treating physician's opinion that she was totally and permanently disabled "because [the ALJ] disagreed," and that the ALJ could have sent interrogatories to Dr. Thompson or conducted another hearing if there were "any doubts." *Id.* As an initial matter, Plaintiff does not identify what medical records were available that Dr. Thompson did not have access to at the time he issued his opinion. *See id.* More importantly, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2011); *see also* 20 C.F.R. § 404.1512(d); *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010). The ALJ did not commit any error when it was determined that enough evidence was available to issue a decision since there was no requirement that the ALJ supplement the record.

Continuing, Plaintiff claims that the ALJ "fail[ed] to take any note of the [her] diagnosis of schizoaffective disorder." ECF Dkt. #10 at 11. Plaintiff also claims that the ALJ misunderstood her testimony regarding her auditory hallucinations, erroneously believing the testimony to be contradictory.[4] *Id.* at 11-12. Despite Plaintiff's claim to the contrary, the ALJ

---

[3]Plaintiff discusses the treating physician rule at greater length later in her brief, and the Court will address these arguments below.

[4]For the remainder of the "Overview" section of her brief, it is not always clear what portion of the record or the ALJ's decision Plaintiff relies upon when presenting her arguments since no specific portion of either is cited. *See* ECF Dkt. #10 at 11-14. Instead, the citations provided for pages 11-12 of Plaintiff's brief all read "*Id.*," which refers the Court back to page 185 of the Transcript. Page 185 of the Transcript contains some of the questions posed by the ALJ to the VE, evidence which is largely immaterial to the arguments presented by Plaintiff. On page 13 of her brief, Plaintiff cites to page 486 of the Transcript, a letter from her attorney to the Appeals Counsel, when stating that "a competitive work environment would not

-5-

specifically mentioned her diagnosis of schizoaffective disorder. *See* Tr. at 112. Further, it is unclear where in the decision Plaintiff believes the ALJ misconstrued her statements regarding hallucinations as inconsistent testimony. The ALJ indicated that Plaintiff answered "not really" when asked if she experienced auditory hallucinations, but later indicated that she was experiencing auditory hallucinations. Tr. at 110-11. The ALJ simply observed changes in Plaintiff's statements regarding auditory hallucinations. *See* Tr. at 116. Moreover, the ALJ did not include these statements as a reason for finding that Plaintiff was not fully credible, further supporting the conclusion that the ALJ did not take the statements as inconsistent when finding that Plaintiff was not disabled. *See* Tr. at 114. Accordingly, Plaintiff's argument regarding the ALJ's treatment of her schizoaffective disorder is without merit.

Plaintiff next asserts that the ALJ's finding that her hearing loss imposed no more than minimal limitations on her ability to work was only based on her ability to hear during the administrative hearings. ECF Dkt. #10 at 12. Continuing, Plaintiff states that she testified that she had difficulty with her hearing aid in noisy environments. *Id.* Plaintiff claims that the ALJ failed to incorporate her difficulties regarding hearing in the RFC. *Id.* As an initial matter, Plaintiff does not explain why it was unreasonable for the ALJ to consider her ability to hear when she appeared for the administrative hearings. Further, Plaintiff omits discussion of the portion of her testimony in which she states that she had "to turn the hearing aid down to hear whether someone's talking to [her] or something" when in a noisy environment. Tr. at 182. The ALJ then asked Plaintiff whether adjusting the volume of her hearing aid when in noisy environments "work[ed]" for her, to which Plaintiff responded in the affirmative. *Id.* at 183. Based on her testimony, it appears that Plaintiff had some difficulty hearing in noisy environments, but that this difficulty could be remedied by adjusting the volume of her hearing aid. Plaintiff has failed to show that the RFC did not adequately address her ability to hear.

---

allow for the level of supervision that [Plaintiff] requires." Plaintiff then references back to this page of her attorney's letter for the remainder of "Overview" section of her brief, however, the material contained in this portion of the letter is largely unrelated to her remaining arguments, and, in any event, does not constitute medical evidence. *See id.* at 13-14.

Continuing, Plaintiff claims that the ALJ's determination that she would need instruction by demonstration and could perform simple, routine, and repetitive tasks did not adequately represent job limitations that would allow her to maintain substantial gainful employment. ECF Dkt. #10 at 12-13. Plaintiff discusses her history of special education and being terminated from past employment as evidence that the ALJ's RFC finding was inadequate. *Id.* The ALJ discussed Plaintiff's history of special education when making the RFC determination. Plaintiff does not explain how her history of special education or the notes from her individualized education plan show that she would be unable to perform tasks that were simple, routine, and repetitive after being instructed through supervision. Plaintiff's general allegations that her history of special education make it impossible for her to maintain employment consistent with the RFC determination are insufficient to warrant a finding of error. Likewise, Plaintiff cites her history of being terminated or leaving employment "because she was not fast enough or because of physical discomfort from her medical conditions." ECF Dkt. #10 at 13. Plaintiff does not cite medical or opinion evidence undermining the ALJ's RFC determination. The ALJ was aware of Plaintiff's work history when making the RFC determination, and Plaintiff has failed to provide sufficient reasons explaining how the ALJ erred when making the determination.

Next, Plaintiff claims that she had limited activities of daily living, and that the ALJ misunderstood her testimony when finding that she went "out to eat with her church friends once in a while." ECF Dkt. #10 at 13-14. The ALJ's indication that Plaintiff went out to eat with church friends was made in the context of a discussion of the impact of her mental impairments. *See* Tr. at 110-11. While Plaintiff did not testify that she went out to eat with church friends, she did testify that she enjoyed going out to eat and that she had friends at church that she considered family. Tr. at 132, 164-65. The fact that the ALJ mistakenly indicated that Plaintiff went out to eat with her church friends does not render the decision unsupported by substantial evidence, especially considering Plaintiff testified that she had a "church family" and that she enjoyed going out to eat. *Id.*

Further, Plaintiff notes that she has difficulty performing some daily activities, however, the ALJ discussed a number of her activities of daily living, including: caring for her personal

needs; passing a driving exam and maintaining a driver's license (but only driving once every few weeks); cooking; washing clothes; attending church; and grocery shopping with the assistance of her husband or mother. Tr. at 111. While Plaintiff indicates that she had difficulty in some activities of daily living, she fails to show that the ALJ erred when determining that her activities of daily living did not support finding her disabled. "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton*, 246 F.3d at 773. The ALJ cited a number of Plaintiff's activities of daily living when determining that she was not disabled under the Social Security Act. The fact that Plaintiff can point to several activities which may support a finding of disability is not grounds to reverse the decision of the ALJ. *See id.*

Plaintiff also briefly states that IQ tests revealed working memory and perpetual reasoning skill scores of sixty-nine, and that further IQ testing demonstrated some scores in the seventies. ECF Dkt. #10 at 14. Based on these scores, Plaintiff states that her deficits "caused her significant trouble when interacting within our society." *Id.* Plaintiff does not allege that the ALJ was unaware of these IQ scores, or attempt to argue that these scores warrant reversal of the ALJ's decision.

### B. Substantial Evidence

Plaintiff asserts that the ALJ's RFC finding is not based on substantial evidence. ECF Dkt. #10 at 14-15. The entirety of Plaintiff's argument consists of the following:

> Significantly, the ALJ did not cite to any medical opinions from any examining physicians which supported his finding that [Plaintiff] can perform light work on a sustainable basis. Light work requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour [workday]." However, the reports of Dr. Thompson and Dr. McKay do not support such a finding. The [sic] do not believe that [Plaintiff] has the ability to keep up the pace in a competitive work environment.
>
> Accordingly, the ALJ cited to no medical evidence which supported his RFC assessment as no such evidence exists in the record. As such, the ALJ's finding that [Plaintiff] can perform light work on a sustainable basis is not based on substantial evidence.

*Id.* (internal citations omitted).

First, Plaintiff's assertion that the ALJ cited no medical evidence which supported his RFC assessment is simply untrue. In making such a broad statement, Plaintiff appears to completely disregard the ALJ's discussion of her: sparse treatment records from 2008-09; mental health treatment for depression in 2010 and 2011; continued mental health treatment after she moved back to Ohio from Florida in 2014; medications prescribed to improve her mental health; meeting with the consultative examiner; treatment notes from 2010 regarding her chest pain; dermatological history; and treatment with her treating physician. *See* Tr. at 112-14. Rather than attempt to explain how any of these medical records do not support the ALJ's RFC finding, Plaintiff instead broadly claims that the ALJ made the RFC finding without any basis.

The Court disagrees. The ALJ provided a thorough recitation of Plaintiff's hearing testimony, treatment history for both her physical and mental impairments, and the opinions presented as to her impairments. Tr. at 109-15. When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found the claimant disabled. *Rogers,* 486 F.3d at 234. The ALJ presented substantial evidence supporting the RFC finding and subsequent denial of benefits. The Court declines to provide an exhaustive list of medical evidence supporting the RFC determination, and Plaintiff has not identified any particular medical evidence that contradicts the ALJ's RFC finding that needs to be addressed by the Court.

Regarding the opinions from Dr. Thompson and Dr. McKay stating that Plaintiff would be unable to work, the decision of whether a claimant is capable of work is reserved for the ALJ and the fact that medical sources stated that Plaintiff was disabled does not mean that the ALJ was required to find that she was disabled. *See* 20 C.F.R. §§ 404.1527(e), 405.1546; *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009). Plaintiff does not present any medical finding made by either physician that she believes contradicts the ALJ's RFC finding. *See* Tr. at 14-15. Plaintiff has failed to establish that the ALJ's RFC finding is not based on substantial evidence.

### C. Treating Physician Rule

Finally, Plaintiff claims that the ALJ erred in assigning "almost no weight" to the medical opinion of her treating physician, Dr. Thompson. ECF Dkt. #10 at 16. An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he or she must provide "good reasons" for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified

-10-

based upon the record." *Parks v. Social Sec. Admin.*, 413 Fed.Appx. 856, 864 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

After quoting Dr. Thompson's assessment of her limitations, Plaintiff presents the following argument:

> Instead of giving weight to [Plaintiff's] primary care physician, Dr. Thompson, the ALJ gives great weight to Dr. Beaty. The ALJ states that Dr. Beaty's decision in Exhibit 6F was that "[Plaintiff's] mental impairments, while imposing some limitation, do not completely preclude her from all work and do not render her disabled." This is completely false and a wholly inaccurate interpretation of everything Dr. Beaty states in Exhibit 6F. The closes thing that Dr. Beaty gets to mentioning anything along these lines is the first preliminary impression of [Plaintiff's] appearance where he states that "[s]he appeared clean and appropriately dressed. There were no obvious appearance of being handicapped, no involuntary movements, and she walked with a normal gait."
>
> So besides disregarding the primary care physician without good reason, the ALJ mistakenly and improperly relies on statements that were never made by Dr. Beaty and gives this nonexistent opinion controlling weight. If Dr. Beaty's opinion was actually given controlling weight, there would in fact be a finding of disability for [Plaintiff] as the doctor's summary of work related tasks include sitting less than five minutes, standing one minute, with problems understanding, problems remembering everything, with severe difficulties sustaining concentration, with task persistence and with social interactions.

ECF Dkt. #10 at 16-17 (internal citations omitted).

Plaintiff's argument is without merit. Regarding Dr. Thompson's opinion, the ALJ was required to provide "good reasons" for discounting the opinion as Dr. Thompson was a treating physician. SSR 96-2p. Dr. Thompson opinion that Plaintiff was "totally and permanently disabled," mainly due to her underlying psychiatric problems and cognitive impairments. Tr. at 813. When providing reasons for discounting Dr. Thompson's opinion, the ALJ indicated that Dr. Thompson stated that Plaintiff was terminated from her last job for "being slow," a statement that directly contradicted Plaintiff's hearing testimony that she quit her job due to skin irritation

-11-

and environmental issues. Tr. at 114. Further, the ALJ stated that Dr. Thompson's limited treatment with Plaintiff failed to document any specific mental limitation that would warrant changes to the RFC. *Id.* The ALJ also noted that Dr. Thompson's treatment notes stated that Plaintiff indicated that she did not want to restart her medications as she felt that she was "well without them." *Id.* (quoting Tr. at 878). Additionally, the ALJ correctly stated that Dr. Thompson's opinion was largely based on Plaintiff's subjective reports and inconsistent with the treatment record. The reasons provided by the ALJ constitute "good reasons" for discounting Dr. Thompson's opinion.

Plaintiff does not provide any substantive argument claiming that the ALJ failed to provide "good reasons" for discounting Dr. Thompson's opinion, or that any of the reasons provided by the ALJ constituted an invalid reason for discounting the opinion. *See* ECF Dkt. #10 at 16-17. Instead, Plaintiff states that the ALJ disregarded Dr. Thompson's opinion "without good reason" and then assigned a misreading of Dr. Beaty's opinion great/controlling weight.[5] According to Plaintiff, since the ALJ assigned great/controlling weight to Dr. Beaty's opinion, it was required that all findings in the opinion be adopted verbatim. *See id.* at 17.

Plaintiff relies on a misapplication of the treating physician rule. The treating physician rule requires that an ALJ provide "good reasons" if he or she assigns less than controlling weight to the opinion of a treating source. *See Wilson*, 378 F.3d at 544; SSR 96-2p. The ALJ provided "good reasons" for discounting Dr. Thompson's opinion. Plaintiff does not contest the reasons offered by the ALJ beyond stating that Dr. Thompson's opinion was disregarded "without good reason." ECF Dkt. #10 at 17. Plaintiff then begins asserting that the ALJ assigned controlling weight to Dr. Beaty's opinion, yet failed to actually adopt the findings contained in the opinion. *Id*. The ALJ did not assign controlling weight to Dr. Beaty's opinion, but rather assigned great weight to the opinion. Tr. at 114. The ALJ was under no obligation to adopt all of the findings contained in Dr. Beaty's opinion. Likewise, the ALJ was not required to evaluate the opinion of

---

[5]Plaintiff first states that the ALJ assigned Dr. Beaty's opinion great weight, but later begins asserting that the opinion was assigned controlling weight. *See* ECF Dkt. #10 at 16-17.

Dr. Beaty pursuant to the treating physician rule as Dr. Beaty was the physician who performed Plaintiff's consultative examination, rather than a treating physician.

For Plaintiff to show that the ALJ violated the treating physician rule, it is required that she demonstrate that the ALJ discounted or rejected a treating physician's opinion without providing "good reasons." *See Wilson*, 378 F.3d at 544; SSR 96-2p. Plaintiff has failed to make such a showing. Moreover, Plaintiff provides no substantive argument regarding the reasons the ALJ provided for assigning Dr. Thompson's opinion less than controlling weight. Accordingly, Plaintiff has failed to show that the ALJ violated the treating physician rule.

## VI. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.


Date: September 18, 2017        */s/George J. Limbert*
                                                    GEORGE J. LIMBERT
                                                  UNITED STATES MAGISTRATE JUDGE